# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| ACHILLION PHARMACEUTICALS, INC., | : **SECURITIES EXCHANGE ACT OF** |
| JASON S. FISHERMAN, KURT GRAVES, | : **1934** |
| MICHAEL D. KISHBAUCH, DAVID I. | : |
| SCHEER, JOSEPH TRUITT, ROBERT L. | : **JURY TRIAL DEMANDED** |
| VAN NOSTRAND, FRANK VERWIEL, and | : |
| NICOLE VITULLO, | : |
| | : |
| Defendants. | : |

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Achillion Pharmaceuticals, Inc. ("Achillion or the "Company") and the members of Achillion's board of directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the proposed acquisition of Achillion by Alexion Pharmaceuticals, Inc. ("Alexion"), a Delaware corporation.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on November 5, 2019 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Beagle Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Alexion, will merge with and into Achillion with Achillion surviving the merger and becoming an indirect wholly owned subsidiary of Alexion (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Achillion common share issued and outstanding will be converted into the right to receive (i) $6.30 in cash; and (ii) one contractual contingent value right pursuant to a CVR Agreement, which will be paid to Achillion shareholders if certain clinical and regulatory milestones are achieved within specified periods (the "Merger Consideration"). These include $1.00 per share for the U.S. Food and Drug Administration ("FDA") approval of danicopan and $1.00 per share for ACH-5228 Phase 3 initiation.

3. As discussed below, Defendants have asked Achillion stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Centerview Partners LLC ("Centerview"), in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Achillion stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Achillion in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Achillion common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Jason S. Fisherman has served as a member of the Board since 2000.

11. Individual Defendant Kurt Graves has served as a member of the Board since June 2012.

12. Individual Defendant Michael D. Kishbauch was Achillion's President and Chief Executive Officer from July 2004 through May 2013 and has remained on the Board.

13. Individual Defendant David I. Scheer has served as Chairman of our Board since March 2010, and as a director of Achillion since August 1998, the founding of the Company.

14. Individual Defendant Joseph Truitt has been the Company's Chief Executive Officer since May 2018 and has served on the Board.

15. Individual Defendant Robert L. van Nostrand has served as a member of the Board since April 2007.

16. Individual Defendant Frank Verwiel has served as a member of the Board since December 2016.

17. Individual Defendant Nicole Vitullo has been a member of the Board since September 2010 and was elected to be Chair of the Board in January 2019.

18. Defendant Achillion is incorporated in Delaware and maintains its principal offices at 1777 Sentry Parkway West, VEVA Building #14 Suite 200, Blue Bell, Pennsylvania 19422. The Company's common stock trades on the Nasdaq Stock Exchange under the symbol "ACHN."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.** **The Proposed Transaction**

21. Achillion, a clinical-stage biopharmaceutical company, discovers, develops, and commercializes small molecule drug therapies for immune system disorders. Its lead drug candidate is ACH-4471, an inhibitor of factor D that is Phase II clinical trials for patients with

4

paroxysmal nocturnal hemoglobinuria (PNH) and C3 glomerulopathy/immune complex membranoproliferative glomerulonephritis. The Company is also developing ACH-5228, a factor D inhibitor that is in Phase I clinical trials; and ACH-5548, a factor D inhibitor, which is in Phase I clinical trials for the treatment of PNH and other complement mediated diseases. It has license agreements with Ora, Inc. for the development and commercialization of ACH-702; and GCA Therapeutics, Ltd for elvucitabine, a nucleoside reverse transcriptase inhibitor for the treatment of hepatitis B infection and human immunodeficiency virus infection. The Company was founded in 1998 and is based in Blue Bell, Pennsylvania.

22. On October 16, 2019, Alexion and Achillion jointly announced the Proposed Transaction:

> BOSTON & BLUE BELL, Pa.--(BUSINESS WIRE)--Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Achillion Pharmaceuticals, Inc. (NASDAQ:ACHN) today announced that they have entered into a definitive agreement for Alexion to acquire Achillion, a clinical-stage biopharmaceutical company focused on the development of oral small molecule Factor D inhibitors to treat people with complement alternative pathway-mediated rare diseases, such as paroxysmal nocturnal hemoglobinuria (PNH) and C3 glomerulopathy (C3G). Achillion currently has two clinical-stage medicines in development, including danicopan (ACH-4471) in Phase 2 and ACH-5228 in Phase 1.
>
> "Alexion has demonstrated the transformative impact that inhibiting C5 can have on multiple rare and devastating diseases. However, we believe this is just the beginning of what's possible with complement inhibition," said Ludwig Hantson, Ph.D., Chief Executive Officer of Alexion. "Targeting a different part of the complement system – the alternative pathway – by inhibiting Factor D production addresses uncontrolled complement activation further upstream in the complement cascade, and importantly, leaves the rest of the complement system intact, which is critical in maintaining the body's ability to fight infection. We believe this approach has the opportunity to help patients with diseases not currently addressed through C5 inhibition. We look forward to applying our nearly three decades of complement and development

expertise to unlock the potential of oral Factor D inhibitors and bring these benefits to patients."

"We have established great momentum – discovering and advancing several small molecules into clinical development that have the potential to treat immune-related diseases associated with the alternative pathway of the complement system," said Joe Truitt, President and Chief Executive Officer at Achillion. "Having already demonstrated proof-of-concept and proof-of-mechanism with our lead candidate, danicopan (ACH-4471), in PNH and C3G, respectively, we believe there is significant opportunity for Factor D inhibition in the treatment of other diseases as well. Alexion is an established leader in developing medicines for complement-mediated diseases, and we look forward to working together to accelerate our objective of bringing novel therapies to patients as quickly as possible and ensuring that the broad promise of this approach is fully realized. We thank our employees, investigators and partners for their incredible work and commitment."

**Transaction Details**
The initial consideration of approximately $930 million, or $6.30 per share of Achillion common stock, will be funded with cash on hand. As part of the acquisition, Alexion will also be acquiring the cash currently on Achillion's balance sheet. As of September 30, 2019, this was approximately $230 million; the actual amount will be determined as of the transaction close. The transaction includes the potential for additional consideration in the form of non-tradeable contingent value rights (CVRs), which will be paid to Achillion shareholders if certain clinical and regulatory milestones are achieved within specified periods. These include $1.00 per share for the U.S. FDA approval of danicopan and $1.00 per share for ACH-5228 Phase 3 initiation.

Alexion's acquisition of Achillion is subject to the approval of Achillion shareholders and satisfaction of customary closing conditions and approval from relevant regulatory agencies, including clearance under the Hart-Scott Rodino Antitrust Improvements Act. Pending these approvals, the transaction is expected to close in the first half of 2020.

23. It is imperative that Achillion's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess

whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.      **The Materially Incomplete and Misleading Proxy Statement**

24.     On November 5, 2019, Achillion filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Achillion Financial Projections*

25.     The Proxy Statement fails to provide material information concerning financial projections prepared by Achillion management and relied upon by Centerview in its analyses. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Centerview with forming a view about the stand-alone valuation of the Company. Proxy at 56. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Achillion management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view

of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric Unlevered Free Cash Flow, but fails to provide a reconciliation of this non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 56.

27. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

30. With respect to the *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose (i) the inputs and assumptions underlying the selection of the reference range of Transaction Values of $400 million to $925 million; and (ii) the reason for including the transaction between UCB S.A. and Ra Pharmaceuticals with a Transaction Value of $2.191 billion. Proxy Statement at 52.

31. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 11.0% to 13.0%; and (iii) the number of fully-diluted shares of Company common stock outstanding as of October 14, 2019. Proxy Statement at 52-53.

32. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analyses that were prepared by Centerview and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

38. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Achillion within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Achillion, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of Achillion, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Achillion, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

| | |
|---|---|
| Dated: November 6, 2019 | **RIGRODSKY & LONG, P.A.** |
| | By: */s/ Gina M. Serra* |
| **OF COUNSEL:** | Brian D. Long (#4347) |
| | Gina M. Serra (#5387) |
| **WOLF HALDENSTEIN ADLER** | 300 Delaware Avenue, Suite 1220 |
| **FREEMAN & HERZ LLP** | Wilmington, DE 19801 |
| Gloria Kui Melwani | Telephone: (302) 295-5310 |
| 270 Madison Avenue | Facsimile: (302) 654-7530 |
| New York, NY 10016 | Email: bdl@rl-legal.com |
| Telephone: (212) 545-4600 | Email: gms@rl-legal.com |
| Facsimile: (212) 686-0114 | |
| Email: melwani@whafh.com | *Attorneys for Plaintiff* |